STATE OF NORTH CAROLINA v. JAMES BERNARD SAMUEL

No. 8221SC503

(Filed 18 January 1983)

**1. Criminal Law § 87.1— allowance of leading questions**
     The trial court did not abuse its discretion in allowing the district attorney to lead a State's witness in eliciting testimony concerning the legal significance of an insurance release form.

2. **Criminal Law § 50.2— opinion testimony as to what witness would have done**

   In a prosecution for obtaining property from an insurance company by false pretenses, an insurance company employee was properly permitted to testify as to whether he would have paid defendant's claim had he known of the discrepancies in the information submitted to his company.

3. **Criminal Law § 42.6— chain of custody of car**

   The State established a sufficient chain of custody of a car to permit the admission of documents found in the trunk of the car 15 days after the car was seized where the evidence showed that the car, its trunk and the fenced-in area in which the car was kept had been locked for the entire 15 days.

APPEAL by defendant from *Albright, Judge.* Judgment entered 28 January 1982 in Superior Court, FORSYTH County. Heard in the Court of Appeals 16 November 1982.

At trial, the State introduced evidence tending to show that defendant had in his possession a 1977 Mercedes Benz automobile that he knew, or had reason to know, was stolen, and that defendant had exchanged the stolen Mercedes' identification numbers for the numbers on a 1973 Mercedes he had purchased. Evidence was also adduced tending to show that defendant had falsified a claim to an insurance company to obtain a settlement for an accident that never occurred.

Defendant's evidence tended to show that he was not guilty of the crimes alleged. From verdicts of guilty of obtaining property by false pretenses and possession of a stolen vehicle, and judgments imposing consecutive sentences of 4 to 5 and 3 to 5 years in each conviction respectively, defendant appeals to this Court.

*Attorney General Edmisten, by Special Deputy Attorney General David S. Crump, for the State.*

*Liner & Bynum, by David V. Liner and Zachary T. Bynum, III, for defendant appellant.*

BECTON, Judge.

I

[1] Defendant first contends that the trial court erred when it allowed the district attorney to lead Wardell Williams, a witness for the State, and elicit testimony concerning the legal

significance of an insurance release form. It is so well-known as to be axiomatic that the trial court has discretionary authority to permit leading questions in proper instances. *State v. Smith,* 291 N.C. 505, 231 S.E. 2d 663 (1977). When the testimony is competent, the defendant's exception will not be sustained unless he can show an abuse of discretion or that he was prejudiced by the court's action. *Id.* Defendant does not deny that the testimony objected to was competent. He could not have been prejudiced thereby since the same evidence was later admitted without objection. Thus, this exception has merit only if the trial court abused its discretion. No such showing has been made, and we find no error in the ruling of the trial court.

## II

[2]    Defendant next assigns error to the admission of a colloquy, a representative portion of which follows:

Q. Would you have paid this claim had you known that the person who presented himself to you as Wardell E. Williams was in truth and fact not Wardell Williams but James Bernard Samuel?

MR. LINER: OBJECTION to what he would have done.

COURT: OVERRULED. You may answer.

A. We would have paid the individual either listed on the registration or the title irrespective of what the individual that was presenting himself said his name was.

Q. Would you have paid that claim had you known that the person who presented himself to you as Wardell E. Williams was in truth and fact not Wardell E. Williams but was James Bernard Samuel?

MR. LINER: Same OBJECTION.

COURT: OVERRULED.

Q. Would you have paid that claim under those circumstances?

A. That—if an individual misrepresents himself that would lead me to questions and I doubt if I'd pay it at that particular time.

Q. Would you have paid that claim had you known in truth and fact that the car did not belong to either — let me rephrase it. Would you have paid that claim that day on August 13th had you known that car had been taken from Bob Neill Pontiac in 1977?

A. Negative.

He argues that the questions and testimony elicited thereby allowed the State's witness, Malcolm Turner, to give an opinion based on hypothetical facts. We disagree for the following reasons.

First, the facts used in the "hypothetical" questions — (i) that the person who applied for and got the insurance company draft was not the named payee, Wardell Williams; (ii) that the registration certificate for the 1973 Mercedes Benz had been altered; and (iii) that the 1977 automobile had been stolen — were all in evidence prior to the examination of Malcolm Turner. Second, a lay witness may testify concerning what he or she would or could have done under certain conditions, or with the knowledge of certain facts. *Brandis on North Carolina Evidence*, § 131 (2d revised ed. 1982); *cf. Kivett v. Telegraph Co.*, 156 N.C. 296, 72 S.E. 388 (1911). Malcolm Turner was asked, essentially, whether he would have paid the claim had he known of the discrepancies in the information submitted to his company. This was proper. We find no error in the admission of this testimony.

### III

[3] By his third assignment of error, defendant challenges the admission of incriminating documents found in the trunk of the stolen 1977 automobile, on the ground that the State failed to establish a proper chain of custody of the automobile. The automobile was seized by the North Carolina Department of Motor Vehicles (DMV) on 6 April 1981. The DMV inspectors entered the passenger compartment of the locked car through use of an unlocking device; they did not open the glove box or the trunk because "they were locked and we did not have a key to get in them and did not want to damage the vehicle to open them up." After searching the car's interior, the inspectors re-locked the car, towed it to, and stored it in, a locked, fenced-in area at Crews Wrecker Service in Kernersville. The car was left there

until 21 April 1981, some fifteen (15) days later, when the inspector returned with a key and searched the vehicle, its glove compartment and trunk. The admitted items—sales documents from a local jeweler made out to defendant—were found in a cardboard box among a potpourri of other items. The purpose of the requirement that a chain of custody be established is to insure, as much as possible, that evidence sought to be used has not been interfered with by third parties during the period between seizure and trial. *See, State v. Fulton,* 299 N.C. 491, 263 S.E. 2d 608 (1980). Here, there was ample competent evidence that the trunk, the car itself, and the fence surrounding the area had, for the entire fifteen days, been locked. Access to the trunk, without a key, could have been obtained only by damaging the trunk lock. No such damage was observed. Thus, we find no reason to infer that interference with this evidence actually or even probably occurred.

IV

We have examined defendant's assignment of error number four and the record relating thereto and find it to be without merit.

We find defendant's trial to have contained *no error.*

No error.

Judges HEDRICK and WEBB concur.